**Sam CORBINO and Jesse Pursell**

v.

**The UNITED STATES.**

**No. 394–72.**

United States Court of Claims.

Dec. 19, 1973.

J. William Gallup, Omaha, Neb., atty. of record, for plaintiff.

Steven J. Bercik, Elizabeth, N. J., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Before LARAMORE, Senior Judge, and DAVIS and NICHOLS, Judges.

LARAMORE, Senior Judge.

Plaintiffs brought this suit for a portion of the value of derelict goods which they recovered under a contract entered into with the General Services Administration. The case is presently before us on the defendant's motion to dismiss the petition for failure to state a claim within this court's jurisdiction.

Plaintiffs believed they knew where to locate valuable derelict goods on government property within the confines of the DeSoto National Wildlife Refuge, in the Missouri River Valley. The goods were on the steamboat *"Bertrand"* which allegedly sank on April 1, 1865, in Bertrand Bend, presently known as DeSoto Bend, of the Missouri River. The plaintiffs entered into a contract with the Administrator of General Services that permitted them to come upon the government lands, subject to various restrictions and precautions, not relevant to the issue, to search for the sunken boat and its derelict cargo. The contract provided that the gross value of the property recovered by the plaintiffs, exclusive of artifacts, would be appor-

---

tioned between the government and the plaintiffs, the government receiving 40 percent of the gross value reduced by a $150 payment received and the plaintiffs receiving 60 percent of the gross value increased by $150.

The contract encompassed the provisions of 40 U.S.C. §310 [1] which encourages the Administrator of General Services to contract for the recovery of wrecked, abandoned, or derelict property which ought to come to the United States and provides for paying just and reasonable compensation to any person who shall actually preserve, collect, surrender, or pay over such property to the United States. In addition, the contract dutifully follows the statute in restricting payment to such moneys as shall be realized and received from the collected property. The contract specifically provided that "no costs or claims shall become chargeable to the government as a resut of this contract."

The plaintiffs recovered a large number of bottles of both whiskey and bitters which the government took into its possession in accordance with the contract. The plaintiffs' suit is requesting $2,000,000 for what it estimates to be its share of the antique value of the bottles containing the bitters.[2] The pleadings and briefs state without additional explanation that the government refuses to make further payment.

The government contends that the court has no jurisdiction over this matter under 28 U.S.C. § 1491 because the contract and section 310 of Title 40 U.S.C. has restricted payment to nonappropriated funds, thus preventing a final judgment from being paid from any general appropriation under 28 U.S.C. § 2517.[3] The government contends further that the present situation is comparable to that found in Kyer v. United States, 369 F.2d 714, 177 Ct.Cl. 747 (1966), in which this court held it had no jurisdiction because the court, within the contemplation of Congress, could not obligate public moneys.

■ The nature of the plaintiffs' claim determines the jurisdiction of the Court of Claims, not the character of the defendant's defense. Eastport S.S. Co. v. United States, 130 F.Supp. 333, 131 Ct.Cl. 210 (1955).

Section 1491 of Title 28 U.S.C. provides that:

The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. * * *

1. "§ 310. Abandoned property. The Administrator of General Services is authorized to make such contracts and provisions as he may deem for the interest of the Government, for the preservation, sale, or collection of any property, or the proceeds thereof, which may have been wrecked, abandoned, or become derelict, being within the jurisdiction of the United States, and which ought to come to the United States, and in such contracts to allow such compensation to any person giving information thereof, or who shall actually preserve, collect, surrender, or pay over the same, as the Administrator of General Services may deem just and reasonable. No costs or claim shall, however, become chargeable to the United States in so obtaining, preserving, collecting, receiving, or making available property, debts, dues, or interests, which shall not be paid from such moneys as shall be realized and received from the property so collected, under each specific agreement."

2. In response to a question from the bench, plaintiffs' attorney stated that the government has offered to settle for the value of the whiskey, but not the bitters.

3. "§ 2517. Payment of judgments.
"(a) Every final judgment rendered by the Court of Claims against the United States shall be paid out of any general appropriation therefor, on presentation to the General Accounting Office of a certification of the judgment by the clerk and chief judge of the court.
"(b) Payment of any such judgment and of interest thereon shall be a full discharge to the United States of all claims and demands arising out of the matters involved in the case or controversy."

■ The plaintiffs' petition clearly sets out the elements necessary for this court to assume jurisdiction; namely, a claim against the United States founded both upon an act of Congress and an express contract.

The wording of 40 U.S.C. § 310 and the contract, upon which the government bases its argument, is a bit puzzling. It purports to allow just and reasonable compensation to any person who shall actually collect, surrender or pay over property to the United States. It then prohibits costs or claims incurred in such an endeavor from becoming chargeable to the United States, except for that which shall be paid from the moneys realized and received from the collected property. Literal interpretation of this final proviso can be construed to mean that nothing will be paid if no money is realized and received from the collected property. To facilitate the basic intention of the contract and statute, collection of property which ought to come to the United States, one must reasonably assume that the government will sell the property at a just and reasonable price to produce funds from which payment can be made or that costs or claims are chargeable to the United States up to and including the just and reasonable value, at an equitably stipulated time, of the collected property.

Under the circumstances before us, it appears fair to assume the intent was to limit payment and collection to the just and reasonable value realized from the subject matter in question. The primary congressional concern was that the cost of a judgment would, in some cases, be imposed directly on the taxpaying public, when Congress did not actually appropriate the necessary funds, because the activity lacked sufficient assets from which to reimburse the United States for the judgment. The key in this case is presence of sufficient assets, the proceeds of which can and will be used to reimburse the plaintiffs, thus preventing the cost of the judgment from falling on the taxpaying public through the direct use of general appropriations. We feel this is what Congress had in mind in limiting recovery under section 310.

The rationale for restricting recovery was clearly expressed when 28 U.S.C. § 1491 was amended to include Military and National Aeronautics & Space Administration Exchanges thus closing a major "loophole" in the Tucker Act. See the explanation to S. 980, at page 3478, 1970 U.S. Code Cong. & Admin. News. This congressional interest in limiting the amount of recovery to the value of the property involved is also disclosed in 40 U.S.C. § 484(m), concerning possession of abandoned or unclaimed property on government premises, etc., where payment is also limited to the proceeds realized from disposition of the property in question.

Based on the statutes and literature relating to the subject, Congress surely did not intend to encourage government contracting activity out of what is basically an appropriated fund activity, the General Services Administration, for the retrieval of property which it would keep with the final explanation that no funds are available from which to make remuneration when the retrieved subject matter in question was meant to be the source of proceeds for payment.

In this case we have sufficient assets, over 4,000 "antique" bottles, that are to be sold in contemplation of the contract to pay the plaintiffs their contracted share. Therefore, assuming jurisdiction and granting relief in this case is not inconsistent with the concept that this court does not have general jurisdiction of nonappropriated fund activities. Any potential final judgment in this case will not result in costs to the taxpaying public by an unauthorized draw on general appropriations because it is limited to and will come solely from the just and reasonable value, if any, of the retrieved goods. During the oral argument, it was also clarified that the proceeds from sale of the subject matter would be miscellaneous receipts which would become

a part of appropriated funds. This will easily meet the requirements of 28 U.S. C. § 2517.

This case is distinguishable from *Kyer, supra,* because in *Kyer* there was no contract subject matter which the parties intended to serve as the source of funds for settlement and from which the court could draw to satisfy a judgment. It should also be mentioned that the *Kyer* case, *supra,* was decided (12/16/66) prior to legislation [4] through which Congress further clarified the liability of nonappropriated fund activities.

Defendant would interpret *Kyer* as barring any suit wherein the contract or the legislation authorizing the contract contemplates that the contract will not cause payments to be made out of appropriated funds. This was assuredly not our intention, for we have always entertained under section 1491 suits for breach of contracts to sell government surplus property, wherein, of course, the contract payments were intended to flow into, not out of, the public treasury. Literally, such a contract is not one "which could have been satisfied out of appropriated funds" (*Kyer,* 369 F.2d at 718, 177 Ct.Cl. at 751) but it was not of the kind we intended to exclude. Judicial language must always be construed in light of the controversy before the court.

Under the circumstances disclosed, we find this court has jurisdiction to grant relief up to and including the yet to be determined value of the contract subject matter and it can enter a judgment for such amount, once the just and reasonable value has been determined, and the proceeds established, without encroaching upon nonappropriated fund restrictions.

For these reasons the defendant's motion to dismiss the petition is denied. The case is remanded to the Trial Judge for further proceedings in conformity with this opinion.

---

4. July 23, 1970, Pub.L. 91–350, § 1(b), 84 Stat. 449.