**OSHCO–PAE–SOMC**

v.

**The UNITED STATES.**

No. 666–87C.

United States Claims Court.

April 6, 1989.

Robert M. Turner, Los Angeles, Cal., atty. of record, for plaintiff. Daniel Fogel and Fogel, Feldman, Ostrov, Ringler & Klevens and James J. Gallagher, J. Robert Humphries and McKenna, Conner & Cuneo, of counsel.

Brian A. Mizoguchi, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. Richard C. Bennet, Robert G. Gargiulo and Ed Bankston, Dept. of Army, of counsel.

## OPINION

MEROW, Judge:

This matter comes before the court on defendant's motion to dismiss, plaintiff's opposition to this motion and supplemental briefs submitted following oral argument.

At issue is whether the Claims Court has jurisdiction to resolve an accounting dispute arising during the performance of a contract between the United States Army Corps of Engineers (Corps) and a Saudi Arabian firm, or whether the dispute must be appealed to the Grievance Council of the Saudi Arabian Government (GC–SAG).

*Facts*

In November of 1981 the Corps entered into a cost plus fixed fee/cost plus award fee contract with plaintiff (DA CA 91–82–0006) to obtain base maintenance and support services in Saudi Arabia.[1] Plaintiff operates as a joint venture under the name OSHCO–PAE–SOMC (OPS). The joint venture is comprised of: OSHCO, a Saudi limited liability company joined by Articles of Association with PAE, a United States company, to form a Saudi limited liability company under the name OSHCO–PAE Limited; and SOMC, a Saudi company.

The contract required that the Corps reimburse OPS for the general and administrative costs (G & A) of the plaintiff's respective home offices to the extent the costs were allocable to contract work. For calendar years 1982–1984 a dispute arose as to plaintiff's entitlement to $1,766,611 in claimed home office G & A allocations. While the Corps had previously paid OPS $503,959 of the $1,766,611 in issue, this sum was recouped by offsets against other payments due OPS.

On June 30, 1987, OPS submitted a $1,766,611 claim to the contracting officer containing the certification language required by the contract and/or the Contract Disputes Act, 41 U.S.C. 605(c)(1). The claim requested that a final decision be rendered.

In the absence of a final decision by the contracting officer,[2] plaintiff filed the instant suit seeking a judgment in the amount of $1,766,611 plus interest, utilizing section 6(c)(2) of the Contract Disputes Act, 41 U.S.C. § 605(c)(5), which provides:

(5) Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this Act. However, in the event an appeal or suit is so commenced in the absence of a

---

**1.** The contract was also utilized to provide services for other United States agencies and a few non-United States agencies.

**2.** Subsequently, on November 22, 1988, plaintiff received a final decision from the contracting officer.

prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision on the claim by the contracting officer.

The contract contains a disputes clause, applicable to Saudi Arabian firms, as follows:

40.1 *Disputes* (Applies to Saudi Arabian Firms Only) .

(a) If a dispute arises relating to the contract, the contractor may submit a claim to the Contracting Officer who shall issue a written decision on the dispute in the manner specified in DAR 1–314.

(b) "Claim" means:

(1) A written request submitted to the Contracting Officer;

(2) for payment of money, adjustment of contract terms, or other relief;

(3) which is in dispute or remains unresolved after a reasonable time for its review and disposition by the Government; and

(4) for which a Contracting Officer's decision is demanded.

(c) In the case of disputed requests or amendments to such requests for payment exceeding $50,000, or with any amendment causing the total request in dispute to exceed $50,000, the Contractor shall certify, at the time of submission as a claim, as follows:

I certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief; and that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable.

(Contractor's Name) _____

(Title)_____

(d) The government shall pay the Contractor interest:

(1) On the amount due on claims submitted under this clause;

(2) at the rates fixed by the Secretary of the Treasury, under the Renegotiation Act, Public Law 92–41;

(3) from the date the Contracting Officer receives the claim, until the Government makes payment.

(e) The decision of the Contracting Officer shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency unless an appeal is timely commenced before the GC–SAG within 30 days from the date of receipt of the Contracting Officer's decision.

(f) In the event the dispute involves a technical matter, the GC–SAG may refer it to a committee of three specialists, one selected by Saudi Arabian Government, one selected by the Contractor, and the third, who shall act as chairman, selected by the other two. The decision of the three specialists concerning the technical issue shall be final and conclusive. The assessment of costs incurred in forming the committee of three specialists shall be determined by the committee in each case. Nothing in this clause shall preclude judicial review of any decision or assessment of costs in accordance with Saudi Arabian law, tradition, and customs.

(g) In the event the GC–SAG determines it does not have jurisdiction to consider, the Contractor may appeal the decision of the Contracting Officer to the Engineer Board of Contract Appeals. If the Contractor elects to so appeal, written notice of such appeal must be furnished to the Engineer Board of Contract Appeals within 90 days from the date of the GC–SAG's determination.

(h) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim or appeal related to the contract, and comply with any decision of the Contracting Officer.

The contract also contained a separate Disputes Clause for "Non–Saudi Firms" which did not contain the sections set out as (e), (f) and (g) above, and which provided for any appeal to go to the Engineer Board of Contract Appeals, as follows:

(e) The decision of the Contracting Officer shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency unless an appeal is timely commenced before the Engineer Board of Contract Appeals within 90

days from the date of receipt of that decision.

While plaintiff raises a question whether the contract involved in this matter was entered into pursuant to a 1965 Engineer Assistance Agreement (EAA) between Saudi Arabia and the United States ("Saudi Arabia, Defense: Construction of Military Facilities," May 24–June 5, 1965, United States—Saudi Arabia, 16 U.S.T. 890, T.I.A.A. No. 5830), it is assumed, for the purposes of the present motion that, as defendant asserts, the EAA, as extended, is applicable.

The EAA provides, in part:

III. *Financing*

A. Prior to initiation of any activity under this agreement, the Corps will furnish to the Saudi Government an estimate of the costs to be incurred therefor by the Corps, exclusive of contract costs for design and construction. This estimate shall include anticipated cost of engineering studies, design by Corps personnel, supervision and inspection of construction activities, and training of designated personnel. The estimate shall cover fund requirements for a period of time (not less than semi-annual) which shall be agreed upon by the Corps and the Saudi Government. Upon receipt and approval of the estimate by the Saudi Government, the required funds shall be deposited to the credit of the Corps by the Saudi Government. Estimates for subsequent periods shall be submitted in time to permit the Saudi Government to fund the requirements to the Corps so as to prevent interruption of the program because of lack of funds.

\* \* \* \* \* \*

V. *Contract Disputes*

The Chief of Engineers of the U.S. Army Corps of Engineers, acting through the U.S. Army Corps of Engineers' Board of Contract Appeals, shall hear and decide appeals taken pursuant to the "Disputes" clause of contracts awarded non-Saudi contractors pursuant to this agreement. The Saudi Government agrees to make such additional funds available as may be necessary to cover the payment of successful claims. 16 U.S.T. 893–95.

By a Royal Decree dated November 9, 1985, addressed to the GC–SAG, King Fahad of Saudi Arabia, acting in his capacity as the Prime Minister of the Council of Ministers, confirmed the responsibility of the GC–SAG to review and solve claims filed there by Saudi firms under Corps contracts. The Decree states, in part, as follows:

> We advise you that we have no objection that the Grievance Board review and solve the claims which Saudi firms, personnel or establishments file against the U.S. Army Corps of Engineers in accordance with the contracts entered into between them. This procedure should be a standard procedure.

In reliance upon the Disputes Clause of the contract and the EAA, defendant seeks dismissal of this action for lack of Claims Court jurisdiction over the accounting dispute involved.[3] In reliance upon the Contract Disputes Act, 41 U.S.C. §§ 605(c)(5), 609(a)(1), as supporting Claims Court jurisdiction over the dispute, plaintiff opposes dismissal of this action.

*Discussion*

Prior to the enactment of the Contract Disputes Act of 1978, 41 U.S.C. §§ 601, *et seq.*, 92 Stat. 2383 (1978), the choice of the forum to resolve contract disputes arising under contracts with the United States was controlled by the contractual agreement of the parties. The United States Court of Claims had statutory jurisdiction over contract claims against the United States, 28 U.S.C. § 1491, but by agreement of the parties, another forum could be given binding decisional authority over claims arising under the contract involved. *United States v. Utah Constr. & Min. Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642

---

**3.** Defendant initially asserted several additional grounds for dismissal, but has withdrawn them during briefing.

(1966); *General Dynamics Corp. v. United States,* 214 Ct.Cl. 607, 618, 558 F.2d 985, 991 (1977).

Following an extensive study, in December 1972 the Commission on Government Procurement submitted to Congress its Report containing an evaluation of the then current system for administrative and judicial resolution of disputes arising in the award and performance of government contracts. The Report set forth some twenty numbered Recommendations, of which No. 6 was "Allow contractors direct access to the Court of Claims and district courts." 4 Report 23; *see Symposium on Government Procurement: Comments on the Procurement Commission's Disputes Remedies and Award Protest Recommendations,* 42 Geo.Wash.L.Rev. 223 (1974).

After prolonged consideration, in 1978 Congress responded to this Recommendation No. 6 by enacting the Contract Disputes Act (CDA) which included a "direct access" provision permitting contractors to bypass any contractually agreed-upon disputes resolution forum and proceed directly to the Court of Claims/Claims Court. Section 10(a)(1) of the CDA, 41 U.S.C. § 609(a)(1), provides as follows:

> (1) Except as provided in paragraph (2), and in lieu of appealing the decision of the contracting officer under section .605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Claims Court, notwithstanding any contract provision, regulation, or rule of law to the contrary.

The applicable Disputes Clause of the contract at issue reflects a choice by the parties of the GC–SAG as the forum to resolve disputes. The clause provides that the contracting officer's decision "shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency unless an appeal is timely commenced before the GC–SAG within 30 days from the date of receipt of the contracting officer's decision."

Under the CDA, 41 U.S.C. § 605(b), it is provided that "[T]he contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter." The appeal authorized by the CDA is to an agency Board of Contract Appeals (41 U.S.C. § 606) or, in lieu of such an appeal, a suit may be brought "directly on the claim in the United States Claims Court, * * *." 41 U.S.C. § 609(a)(1). The GC–SAG is not a forum authorized by the CDA to resolve disputes arising from contracts subject to that Act.

Accordingly, it must be decided whether, notwithstanding the provisions of the CDA, the parties' agreement to have the GC–SAG resolve their dispute is controlling, as defendant proposes.

■ Defendant urges that the EAA, an Executive Agreement, limits American jurisdiction to non-Saudi contractor appeals such as to preclude Claims Court jurisdiction over a Saudi contractor's claim. A specific Executive Agreement could serve to deprive the Claims Court of jurisdiction otherwise provided by statute. *See Dames & Moore v. Regan,* 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981); *Johnson Controls, Inc. v. United States,* 8 Cl.Ct. 359 (1985), *aff'd,* 795 F.2d 1011 (Fed.Cir.1986). However, the EAA is not such an Executive Agreement, at least with respect to claims by Saudi contractors. As quoted, *supra,* the EAA addresses only the claims of non-Saudi contractors and directs these to the U.S. Army Corps of Engineers' Board of Contract Appeals. The several negotiating histories cited by defendant do show Saudi government concern over disputes provisions which would deny Saudi contractors resort to Saudi legal institutions. However, under the present contract provisions, plaintiff had an option to appeal to the GC–SAG. This is because such an appeal, by agreement of the parties, if filed within thirty days, deprives the contracting officer's decision of finality. The Disputes Clause provided for finality if the contracting officer's decision is not appealed to the GC–SAG within thirty days. This lack of finality in the event of a timely appeal to the GC–SAG obviates conflict

with 41 U.S.C. § 605(b) which would, otherwise, confer statutory finality on a contracting officer's final decision not timely appealed to an agency contract appeals board or made the subject of a direct access Claims Court suit. *See Russell Corp. v. United States,* 15 Cl.Ct. 760 (1988). Agreements which provide for alternative resolution proceedings prior to a final decision by the contracting officer are not inconsistent with the Contract Disputes Act. *See Mayfair Construction Co. v. United States,* 841 F.2d 1576, 1578 (Fed.Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 528 (1988).

■■■ An agreement removing a contractor's option to choose the Claims Court for resolution of a claim finally decided by a contracting officer under the Contract Disputes Act cannot deprive the Claims Court of jurisdiction over a timely filed suit. The CDA, 41 U.S.C. § 609(a)(1), is specific that contractors retain a right to bring such a matter to the Claims Court, "notwithstanding any contract provision, regulation, or rule of law to the contrary." [4] With respect to this clause, the Federal Circuit recently noted:

> Where Congress did not want the Act altered by parties' agreements, it said so. *See, e.g.,* 41 U.S.C. § 609(b) ("notwithstanding any contract provision, regulation, or rules of law to the contrary").

*Do–Well Machine Shop, Inc. v. United States,* 870 F.2d 637, 641 (Fed.Cir.1989). Where Congress has precluded contractors from bargaining away rights, the legislation is controlling, not the contract. *See Lockheed Aircraft Corp. v. United States,* 179 Ct.Cl. 545, 552, 375 F.2d 786, 790 (1967).

Accordingly, defendant has not shown any valid basis on which the contract involved in this matter can be excepted from the provisions of the CDA. The subject matter of the contract is clearly within those specified as subject to the CDA, 41 U.S.C. § 602(a). This is not a contract with a foreign government, or agency thereof, or international organization, or subsidiary body thereof which may be excluded from CDA application. 41 U.S.C. § 602(c). While the funds available for this contract are to be provided by Saudi Arabia, the contract was executed between the Corps and a private Saudi joint venture.[5] The situation here does not differ, in principle, from that faced by all contractors upon the effective date of the CDA. Notwithstanding the standard Disputes provision then in use in government contracts which required prior resolution of disputes by a contract appeal board, direct access to the Claims Court became an available option. *See Joseph Morton Co. v. United States,* 757 F.2d 1273, 1279–80 (1985); *Troup Bros., Inc. v. United States,* 221 Ct.Cl. 850, 618 F.2d 123 (1979).

Thus, it is concluded that the Claims Court has jurisdiction over the pleaded accounting dispute, and it is ORDERED that defendant's motion to dismiss is denied, and defendant shall have thirty days to file a pleading in response to the complaint.

■■■■

4. As plaintiff has the statutory option to bring a claim before the Claims Court after a final decision by a contracting officer, either actual or deemed, pursuant to 41 U.S.C. § 605(c)(5), resort to the GC–SAG cannot be compelled. Clearly, given the application of the CDA to the contract, an appeal to the GC–SAG is an option available to a Saudi contractor, but not a mandatory procedure which must be exhausted prior to a Claims Court action.

5. Moreover, the appropriation statute applicable to Claims Court judgments entered pursuant to 28 U.S.C. § 2517(a) provides for payment out of judgment appropriations only when "payment is not otherwise provided for; * * *." 31 U.S.C. § 1304(a)(1). Where funds to cover contract obligations are to be furnished by a foreign government, payment is "otherwise provided for" such that any Claims Court judgment can expressly be made payable only out of such funds. *See* Opinion of the Comptroller General, B–211206 (Sept. 27, 1984); *Corbino v. United States,* 203 Ct.Cl. 278, 488 F.2d 1008 (1973). As discussed, *supra,* the contractor had an option to present its claim to the GC–SAG. Undoubtedly, a contractor would exercise this option if concerned that Saudi funds would not be forthcoming to pay any Claims Court judgment it obtained.