**Ignatius de CICCO**

v.

**The UNITED STATES.**

No. 151–78.

United States Court of Claims.

March 24, 1982.

---

Charles M. Munnecke, Washington, D. C., atty. of record, for plaintiff. Thomas H. King, Washington, D. C., of counsel.

Kathleen A. Flynn, Washington, D. C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, SKELTON, Senior Judge, and NICHOLS, Judge.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

SKELTON, Senior Judge:

The plaintiff, Ignatius de Cicco, was released from active duty as a colonel in the United States Air Force Reserve on January 31, 1977. He sues the defendant United States here for disability retirement pay from February 1, 1977, to the present and for an order directing the Secretary of the

Air Force to place plaintiff's name on the disability retirement list effective February 1, 1977, with entitlement to appropriate retirement pay, alleging that the denial of his request by the Air Force Board for Correction of Military Records, dated October 1, 1979, was arbitrary, capricious, unsupported by substantial evidence and contrary to applicable statutes and regulations. In the alternative, the plaintiff seeks readjustment pay in the sum of $15,000. The defendant denies that plaintiff is entitled to disability retirement pay or readjustment pay, and moves to dismiss his suit. The case is before us on cross-motions for summary judgment. We hold for the defendant. The facts are as follows:

Plaintiff Ignatius de Cicco entered into extended active duty as a Colonel in the Delaware Air National Guard on May 10, 1970. While in the service, he was the United States Property and Fiscal Officer (USPFO) for the State of Delaware. In the early part of 1976, plaintiff informed his superior officer, Clarence Atkinson, the Adjutant General for Delaware, that he intended to retire from his position with the Air Force. In April of 1976, plaintiff asked his superior officer to find a replacement for him. On August 2, 1976, plaintiff officially requested of the National Guard Bureau that his tour of duty be curtailed for medical reasons. The plaintiff's Officer Effectiveness Report for the period of August 1, 1975, to June 30, 1976, shows that his superior officers considered his performance above standard in five categories, superior in three categories, and average in only one category.

Between 1974 and 1977 the plaintiff was given a number of medical examinations. Following physical examinations in June, 1974, and May, 1975, he was found qualified for worldwide duty. On June 25, 1976, plaintiff was examined by Major Thomas R. Shepler, M.D. at Andrews Air Force Base, Maryland, for the purpose of meeting a Medical Board. Dr. Shepler listed plaintiff's defects as mild osteoarthritis, mild peritendonitis of both shoulders, and a biceps tendon rupture of the long head of the right biceps, and found him qualified for

military service. Dr. Shepler's Report of Examination was concurred in by the Air Force Military Personnel Center/Surgeon General Medical Standards Division (AFMPC/SGM) at Randolph Air Force Base, Texas. Another physical examination was made at Dover Air Force Base Hospital on July 30, 1976, for the purpose of a Medical Board. Dr. Gerald A. Champlin, the examining physician, diagnosed osteoarthritis of the spine, tendonitis in both shoulders, rupture of the long head of the right biceps, hearing loss, benign prostatic hypertrophy, and hyperlipidemia. Dr. Champlin concluded that plaintiff should not be considered for worldwide duty, but only for sedentary positions with restricted time and physical activity limitations. The approving physician was Lieutenant Colonel Lester L. Borden. On November 1, 1976, a Medical Board at Dover Air Force Base Hospital recommended plaintiff's transfer to another hospital for observation, treatment and disposition.

Plaintiff was re-examined by Dr. Shepler at Andrews Air Force Base Hospital on November 29, 1976, and again found to be qualified for military service. Dr. Shepler stated in his Narrative Summary dated December 2, 1976, that plaintiff had mild spinal osteoarthritis, peritendonitis of both shoulders, signs of sciatica, and a rupture of the long head of the right biceps. A Medical Board then met at Andrews Air Force Base Hospital for the purpose of considering plaintiff's fitness for continued active duty. In the Medical Board Report dated December 3, 1976, and signed by Colonel John W. Barrett, Chief of Orthopedic Surgery, the Board recommended plaintiff's return to active duty, concluding:

This 55 year old man has suffered no significant recent change in his symptoms of multiple joint degenerative disease which is well documented in medical records and in 2 recent orthopaedic evaluations (Narrative Summary and Clinic visit of 12 May 76). Normal laboratory studies are noted which rule out Rheumatoid arthritis, gout or other connective tissue disorders. The Medical Board has no reason to find this man unfit at this time.

On December 9, 1976, plaintiff addressed a Letter of Exception to the Air Force Military Personnel Center/Surgeon General Physical Standards Division (AFMPC/SGMP) at Randolph Air Force Base citing his physical condition and its effect on his performance, the extensive physical examination of Dr. Champlin, and the brevity of Dr. Shepler's examination on November 29, 1976. On January 6, 1977, the AFMPC/SGMP concurred with the Board and recommended "Return to Duty."

After learning of this adverse determination that the military considered him fit for duty, plaintiff asked his superior officer if he could withdraw his retirement application. His superior officer told him that his request to withdraw his retirement application had to be submitted to the same place he originally submitted his application, i.e., to the Chief of the National Guard Bureau. In a letter dated January 7, 1977, plaintiff was informed by the executive officer of the National Guard Bureau that his appointment as contracting officer was terminated effective January 10, 1977. In a letter dated January 13, 1977, plaintiff requested of the Adjutant General, not the National Guard Bureau, that he be permitted to continue to serve as the USPFO because of the finding of fitness by the Medical Board that he was able to continue on active duty. In a Report of Separation From Active Duty, plaintiff was advised that he was released from active duty on January 31, 1977.

In a letter dated September 19, 1977, plaintiff was advised by the Director of Personnel Actions that his active duty status should have been terminated under 10 U.S.C. § 1007 on January 31, 1977, the date he was released from active duty. Instead, plaintiff had been erroneously transferred to the Nonaffiliated Reserve Section. Instead of choosing to be discharged, plaintiff opted to be assigned to the Retired Reserve on October 22, 1977.

On August 4, 1977, plaintiff received a 60 percent disability rating for his arthritis from the Veterans Administration (VA) which does not have to make a finding of unfitness for duty before it can make a disability award. This award was made retroactively effective from February 1, 1977, the day after his release from active duty. The VA also determined plaintiff was unemployable from March 22, 1978, and thereafter.

Plaintiff submitted to a physical examination at Kirkland Air Force Base, New Mexico, on September 20, 1977. The Report of the Medical Examination showed that he was found not qualified for worldwide duty and continued Air Force commission. The consultation sheet attached to the Report of Medical Examination shows that on September 23, 1977, plaintiff was referred to the Orthopedic Clinic for an evaluation to determine his qualification for continued worldwide duty. In the opinion of the consulting orthopedic surgeon, Major James R. Watson, plaintiff was not qualified for worldwide duty.

Plaintiff was also examined by Dr. Robert G. Loeffler, an orthopedic surgeon, on February 7, 1978. Dr. Loeffler concluded that he considered plaintiff very significantly disabled due to generalized arthritic changes and an old rupture of the biceps with residual weakness.

Plaintiff sought to have the determination that he was fit for duty and, therefore, ineligible for disability retirement, set aside by the Air Force Board for the Correction of Military Records (Correction Board). The Consultant Staff of the Surgeon General reviewed plaintiff's case, and on November 3, 1978, stated that plaintiff was medically fit for retention or appropriate separation at the time of his release from active duty and recommended that his application to correct his records be denied. The Correction Board considered the medical entries of record favorable to plaintiff, relative to his not being qualified for worldwide duty prior to his release from active duty on January 31, 1977, as well as the post-service findings of disability by Dr. Watson and Dr. Loeffler and the 60% disability rating by the VA. The Board also noted the evidence unfavorable to plaintiff, including the December 3, 1976, Medical Board Report and

the November 3, 1978, evaluation by the Consultant Staff of the Surgeon General. In a decision dated October 1, 1979, the Correction Board determined that the evidence plaintiff presented did not demonstrate the existence of probable material error or injustice, and denied without a hearing his request that his records be corrected to show him retired by reason of physical disability with a 60% rating in the grade of colonel. Thereafter, plaintiff initiated this action.

■ Generally, our authority in disability retirement cases is limited to determining whether the decision of the Correction Board is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. *E.g., Craft v. United States*, 210 Ct.Cl. 170, 179, 544 F.2d 468, 473 (1976); *Newman v. United States*, 185 Ct.Cl. 269, 276 (1968); *Harris v. United States*, 177 Ct.Cl. 538, 541 (1966). As expressed by the court in *Harris, supra*:

> * * * [T]he traditional role of the court on review 'is to determine not whether the claimant was unfit for service at the time of his release but rather whether the finding of the Secretary * * * that the serviceman was fit was so arbitrary, capricious or unsupported by evidence as to be contrary to the applicable principles of law.' *Johnston v. United States*, 157 Ct.Cl. 474 (1962). 177 Ct.Cl. at 541.

Therefore, we examine the decision of the Correction Board subject to these limitations in our role as a reviewing court.

The plaintiff contends that there is a substantial dispute on the issue of his fitness for military duty which precludes summary judgment and requires a remand to the trial division for a trial on the merits. He says that the physical examination of July 30, 1976, showing him unfit for worldwide duty, the December 3, 1976, Medical Board Report recommending his return to duty, his Letter of Exception, the VA disability rating and the post-service medical examinations by Dr. Watson and Dr. Loeffler constitute significant and controlling medical evidence of his disability, outweighing the findings of fitness by the Staff Advisory and the Correction Board. Alternatively, the plaintiff argues that the evidence requires this court to find that the Correction Board's decision was arbitrary, capricious, and unsupported by substantial evidence. We do not agree with either contention.

Plaintiff relies upon *Brown v. United States*, 184 Ct.Cl. 501, 396 F.2d 989 (1968), to support his position that he is entitled to a trial *de novo.* However, after stating that in certain close cases the record may require supplementation by medical experts at a *de novo* hearing, the *Brown* court went on to say:

> Rather, the *de novo* evidence has generally been new to the case, not merely to the court. At present, if the parties in this court have nothing new to add, they normally both rest on the administrative record. If that is not done and the government believes that a *de novo* trial will truly be a duplication of a prior hearing, it can move for summary judgment on the administrative record, suggesting that the claimant proposes to offer nothing new. If that is so, we are and would be hospitable to a disposition of the case on the existing record. Duplication of hearings is being, and can be, avoided without excluding evidence which is far from repetitive. 184 Ct.Cl. at 515–516, 396 F.2d at 999.

■ In the instant case the plaintiff has presented no new evidence. The record shows that all of the evidence proffered by the plaintiff, including his affidavit and the post-service medical reports, was considered by the Correction Board before it rendered its decision. Since a *de novo* hearing in this court would merely be an unnecessary duplication of the Correction Board's hearing, the case is ripe for disposition by summary judgment. In addition, since the court's judgment in this case must be based upon the substantial evidence test, it would be improper for the court to reweigh the medical evidence or the credibility of the witnesses. *See Beckham v. United States*, 183 Ct.Cl. 628, 635, 392 F.2d 619, 622 (1968).

The plaintiff contends further that the evidence requires this court to find that the Correction Board's decision was arbitrary, capricious, and unsupported by substantial evidence. The plaintiff has alleged neither procedural defects in the Board's decision nor the existence of any facts indicating the Board acted arbitrarily or capriciously. Plaintiff argues that the Correction Board's decision is not supported by substantial evidence because the medical evidence in the record supports the contrary conclusion that plaintiff was unfit for military duty. The argument of the plaintiff is without merit. All of the evidence plaintiff contends supports his position was considered by the Correction Board. Section 1201 of Title 10 of the United States Code provides, in pertinent part:

Upon a determination *by the Secretary* concerned that a member of a regular component of the armed forces entitled to basic pay, or any other member of the armed forces entitled to basic pay who has been called or ordered to active duty (other than for training under section 270(b) of this title) for a period of more than 30 days, is unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay, the Secretary may retire the member, with retired pay computed under section 1401 of this title, *if the Secretary also determines* that—

(1) based upon accepted medical principles, the disability is of a permanent nature; * * * (Emphasis supplied).

In *Johnston v. United States*, 157 Ct.Cl. 474 (1962), this court stated:

* * * The issue before us is whether the Secretary's decision that plaintiff was physically fit to perform duties commensurate with his rank and office at the time of his release from service was so arbitrary and capricious as to constitute a violation of his legislative mandate. In order to establish that the Secretary's action was so arbitrary and capricious, plaintiff must discharge a very substantial burden of proof. * * * 157 Ct.Cl. at 478.

None of the evidence proffered by plaintiff is conclusive on the question of his fitness for military duty. Plaintiff's 60% disability compensation rating by the VA is not determinative on the issue of his fitness for worldwide duty. *See e.g., Finn v. United States*, 212 Ct.Cl. 353, 357, 548 F.2d 340, 342 (1977); *Bennett v. United States*, 200 Ct.Cl. 635, 643 (1973); *Unterberg v. United States*, 188 Ct.Cl. 994, 1003, 412 F.2d 1341, 1346 (1969). In *Bennett*, after noting that the VA disability ratings are based on different statutes and made for different purposes, the court went on to state:

While the disability rating assigned by the VA for its purposes is a proper item of evidence to be weighed by the military together with all other evidence, *Wesolowski v. United States*, 174 Ct.Cl. 682, 693 (1966), the military's determination is, nevertheless, directed to the sole question of whether the particular member of the armed forces "is unfit to perform the duties of his office, grade, rank or rating * * *." 200 Ct.Cl. at 644.

The record shows that the Correction Board's determination that plaintiff's application should be denied was made with full knowledge of the VA's disability rating.

It is undisputed that plaintiff had a long history of arthritis and had arthritis at the time of his resignation. Except as to the issue of his fitness for military duty, plaintiff's medical history is uncontested. Plaintiff's January, 1978, affidavit and his Letter of Exception to the Medical Board Report were merely part of the evidence to be weighed by the Correction Board. Furthermore, the Letter of Exception was also considered by the AFMPC/SGM prior to its recommendation supporting the Medical Board's recommendation that plaintiff be returned to duty.

Plaintiff contends that the reports of Dr. Loeffler and Dr. Champlin and the report from Kirkland supporting his position reflect his true condition and is entitled to more weight than defendant's evidence, characterizing Dr. Shepler's examination as "cursory" and the Staff Advisory as "boilerplate."

Initially, it must be noted that the Kirkland examination took place more than seven months after plaintiff's retirement, and Dr. Loeffler's examination over a year after plaintiff's retirement. Neither report dealt with plaintiff's condition at the time of his retirement on February 1, 1977, but stated only that he was disabled at the time of the respective examinations. The Air Force was not required to accept the findings of Dr. Loeffler, a private physician, and there was no showing that he used the Air Force standards of fitness for duty in finding plaintiff disabled.

 Although there was conflicting medical evidence in the record, there was substantial medical evidence supporting the Correction Board's finding that plaintiff was fit for military duty. The December 3, 1976, Medical Board Report, which was based on the findings of Dr. Shepler's examination of plaintiff, and the November 3, 1978, evaluation of the Consultant Staff of the Surgeon General constitute substantial evidence of plaintiff's fitness for duty. Plaintiff has made no showing that the Staff Advisory was "boilerplate," and has introduced no evidence that it was not proper and based on the record. The unsupported argument that Dr. Shepler's examination was "cursory" does not overcome the presumption that Dr. Shepler faithfully performed his duty. *See Unterberg v. United States, supra,* 188 Ct.Cl. at 1002, 412 F.2d at 1346.

As expressed by this court in *Newman, supra:*

It is not the function of this court to substitute its own judgment for that of the board. Plaintiff has the burden of proving by clearly convincing proof that the board or the Secretary acted arbitrarily or capriciously. *Wesolowski v. United States,* 174 Ct.Cl. 682 (1966). 185 Ct.Cl. at 276.

We conclude that plaintiff has not sustained his burden of proof.

We hold that the decision of the Correction Board denying plaintiff's application was not arbitrary or capricious, and that it was supported by substantial evidence and

that it should be, and it is hereby, approved and affirmed.

As to plaintiff's claim for readjustment pay, the issue was neither discussed in the briefs nor argued before the court, and it appears to have been abandoned. However, in any event he is not entitled to readjustment pay because he does not meet the requirements of the statute (10 U.S.C. § 687).

In light of our resolution of this case, we need not consider the other issues raised by the parties.

The motion for summary judgment of the defendant is granted and that of the plaintiff is denied, and plaintiff's petition is dismissed.