**David W. HEISIG, Plaintiff,**

v.

**SECRETARY OF THE ARMY, Defendant.**

**Civ. A. No. 82–1060.**

United States District Court, District of Columbia.

Nov. 19, 1982.

Norman L. Blumenfeld, Washington, D.C., for plaintiff.

Mitchell Berger, Asst. U.S. Atty., Civ. Div., Washington, D.C., for defendant.

## MEMORANDUM

FLANNERY, District Judge.

This matter is before the court on the motion of defendant to dismiss or, in the alternative, for affirmance of the decision of the Army Board for Correction of Military Records ("ABCMR") denying plaintiff's application to convert his honorable discharge from the Army to a medical disability retirement. Plaintiff has filed a motion for reversal of the ABCMR decision and in opposition to defendant's motion. For the reasons set forth below, the court affirms the decision of the ABCMR.

### I. *Facts*

In September, 1979, plaintiff was for a second time passed over for promotion to the rank of Regular Army Major. At that time plaintiff was informed that, pursuant to 10 U.S.C. § 3303, this second failure to be promoted would require his discharge from the Army as of March 1, 1978.

During plaintiff's pre-discharge physical examination, an Army physician found plaintiff unfit for duty as defined in Army Regulation ("AR") 40–501 because he suffered from gastroesophageal reflux. Record at 130. This condition, for which plaintiff had unsuccessfully undergone surgery in 1971, is a digestive disorder involving general difficulty in digestion and excessive secretion of gastric acids which results in reflux, a repeated vomiting or spitting up of food and bile shortly after eating. Having found the plaintiff medically unfit, the examining physician referred plaintiff to a Medical Evaluation Board ("MEBD"), the first stage of Army review to determine if a member of the Army is fit for duty.[1]

---

1. During the pendency of the MEBD proceeding, the Army indefinitely postponed plaintiff's previously ordered discharge.

MEBDs may decide only if a member meets the medical criteria for retention in the Army. AR 635–40 § 4–12 (1980).[2] If the MEBD finds that the member has a medical disability that raises a "substantial doubt" as to his ability to perform his duties, it must refer the case to a Physical Evaluation Board ("PEB") for resolution of the ultimate question of whether the member is fit for duty. AR 635–40, §§ 4–13(a); 4–18(a)(1); 4–18(c)(1). PEB review itself is divided into two steps, the first informal, the second a formal hearing which includes the taking of testimony. AR 635–40 §§ 4–19; 4–20. A member dissatisfied with the outcome of the PEB hearing may seek review through successive layers of the Army hierarchy, to the Commanding Generals of the United States Army Physical Disability Agency and, subsequently, of the United States Army Military Personnel Center, AR 635–40 §§ 4–21—4–24, and finally the ABCMR.

In a report dated March 2, 1978, the MEBD which evaluated plaintiff found that he suffered from seven medical impairments,[3] including the gastric condition. Concluding that the requisite doubt existed as to plaintiff's ability to perform his duty, the MEBD referred the matter to a PEB. Record at 74–77.

For the purposes of PEB proceedings, a member is presumed to be fit for duty if he has continued to perform his duties until the time of referral for medical evaluation.

AR 635–40 § 2–2(b)(1).[4] The burden is on the member seeking medical retirement to prove by a preponderance of the evidence that he is unfit for duty. AR 635–40 § 2–2b(4). The presumption of fitness may be overcome if the evidence establishes that:

> Acute, grave illness or injury or other deterioration of physical condition that occurred immediately prior to or coincidentally with the member's separation for reasons other than physical disability, rendered him unfit for further duty.

AR 635–40. § 2–2b(2)(b). In other words, a member who has been able to continue to perform his duty until the moment of separation from the Army, thereby creating the presumption of fitness, can undo that presumption by showing that a medical problem occurred or deteriorated at virtually the same time as his discharge, rendering him unfit.

The determination of the PEB as to the member's fitness for duty is not a purely medical judgment, unlike the evaluation of the MEBD. The PEB evaluates the member's physical fitness in light of the demands made on the member by the type of tasks his rank and duties require him to perform. A member may be suffering from a particular ailment, and therefore fail to meet Army medical retention standards, and yet still be capable of performing the tasks of his particular job.[5]

---

2. Defendant has submitted as an exhibit to its motion a copy of AR 635–40 as promulgated on February 15, 1980. Plaintiff correctly points out that an earlier version of the same regulation, promulgated February 25, 1975, is properly applicable to this case. The only difference between the two versions cited by plaintiff, however, occurs in § 2–2. All discussion of AR 635–40 herein, except with respect to § 2–2, shall therefore refer to the 1980 version.

3. The impairments found were: (1) hiatal hernia, gastroesophageal reflux, (3) erosive esophagitis secondary to diagnosis 2, (3) status post Hill procedure in 1971 for gastroesophageal reflux, (4) mild to moderate high frequency hearing loss in right ear, (5) chronic cervical strain manifested by chronic pain in neck and left shoulder with neurological deficit, and (7) occipital neuralgia, left, manifested by great occipital nerve tenderness. Record at 74.

4. The 1975 version of AR 635–40 § 2–2 applicable to this case, provides:

> b. ...
> (1) When a member is being processed for separation for reasons other than physical disability ... his continued performance of duty (until he is referred to the physical disability system for evaluation for separation for reasons indicated above) creates a presumption that the member is fit for duty.... [S]uch a member should not be referred to a physical evaluation board unless his physical defects raise substantial doubt that he is fit to continue to perform the duties of his office, grade, rank, or rating.

5. AR 635–40 § 2–1 provides:

> The mere presence of an impairment does not, of itself, justify a finding of unfitness

Furthermore, the PEB is not limited to consideration of medical evidence alone in arriving at its determination. Indeed, AR 635–40 § 2–1(c) suggests that other evidence may be more persuasive. It states:

A member may be referred for physical evaluation under other circumstances [other than immediately following acute, grave illness or injury]. If so, evaluations of his performance of duty by his supervisors (letters, efficiency reports, or personal testimony) may provide better evidence than a clinical estimate by a physician of the member's physical ability to perform the duties of his office, grade, rank, or rating. Thus, if the evidence establishes the fact that the member adequately performed the normal duties of his office, grade, rank, or rating until the time he was referred for physical evaluation, he might be considered fit for duty. This is true even though medical evidence indicates his physical ability to perform such duties may be questionable.

The informal PEB which heard plaintiff's case found him fit for duty, concluding that he had failed to overcome the presumption of fitness. At the hearing before the formal PEB on April 5, 1978 plaintiff testified, as he had contended before the MEBD and informal PEB, that his gastric condition had deteriorated dramatically in the six to eight months preceding his scheduled discharge. Plaintiff argued that the evidence of deterioration was sufficient under AR 635–40 § 2–2(b) to overcome the presumption of fitness. Questions by Army counsel and PEB members, however, elicited the fact that despite the claimed deterioration plaintiff had made no sick call between April, 1977 and January, 1978, the time of plaintiff's predischarge physical examination. PEB members also noted plaintiff's general appearance of good health and the fact that plaintiff was able to play golf and softball. Moreover, the record before the PEB disclosed that up to and including the period of alleged deterioration plaintiff's job performance was consistently rated as

because of physical disability. In each case, it is necessary to compare the nature and degree of physical disability present with the

superior in his periodic evaluation reports. Based on the testimony at the hearing, plaintiff's medical and personnel records, and the record in the prior proceedings, the formal PEB concluded that since plaintiff had continued to perform his duty in a satisfactory manner until notified of his discharge, plaintiff had failed to overcome the presumption of fitness. Record at 92.

On June 5, 1978, plaintiff was honorably discharged from the Army. Record at 1. Upon discharge he received $15,000 in separation and readjustment pay.

Following his receipt in October, 1978 of a combined disability rating of 40 percent from the Veterans Administration, plaintiff in November, 1978 asked the ABCMR to convert his honorable discharge into a medical disability retirement. At the request of the ABCMR, the Army Office of the Surgeon General reviewed plaintiff's medical records and concurred with the earlier MEBD finding that plaintiff failed to meet Army medical retention standards. Record at 19. Subsequently, the United States Army Physical Disability Agency, which in an earlier review had affirmed the PEB finding of fitness, reconsidered plaintiff's case, but again refused to disturb the PEB conclusion, despite plaintiff's conceded medical problems, that he was fit for duty at the time of his discharge. Record at 17–18.

In a letter dated December 5, 1979, the ABCMR informed plaintiff of the conclusions of these other panels and gave plaintiff 60 days to submit any other evidence he wished the ABCMR to consider. Having received no response, the ABCMR on April 9, 1980 denied plaintiff's request. Record at 26–29.

Subsequently, plaintiff's counsel informed the ABCMR that in a letter of February 5, 1980, apparently never received by the ABCMR, he had requested a hearing or leave to have more time to file further evidence. The ABCMR reopened the case

requirements of the duties the member reasonably may be expected to perform because of his office, grade, rank or rating.

and gave plaintiff another 60 days during which time plaintiff submitted additional affidavits. The Surgeon General and Physical Disability Agency again reviewed plaintiff's contentions, but in July, 1981 reiterated their prior conclusions. Finding that plaintiff had failed to demonstrate probable material error in the earlier determinations, the ABCMR on September 2, 1981 again denied plaintiff's request without a formal hearing. This action followed.

## II. *Discussion*

### A. *Jurisdiction*

Defendants have moved that this case be dismissed for lack of subject matter jurisdiction, arguing that although plaintiff characterizes his claim as one for a declaratory judgment, a final judgment in plaintiff's favor would result in an award to him of more than $43,000 in back retirement pay. Therefore, defendant contends plaintiff in fact advances a non-tort claim seeking damages in excess of $10,000, a claim within the exclusive jurisdiction of the Court of Claims under the Tucker Act, 28 U.S.C. § 1346(a)(2).

Where a declaration in favor of a plaintiff seeking reinstatement to a job with the federal government would immediately and necessarily entitle plaintiff to monetary relief, the relief sought is in substance in the nature of a money judgment against the United States. *Carter v. Seamans,* 411 F.2d 767, 777 (5th Cir.1969); *Larsen v. Hoffman,* 444 F.Supp. 245, 251 (D.D.C.1977). Where the amount of money judgment sought exceeds $10,000, exclusive jurisdiction to hear the suit lies with the Court of Claims. 28 U.S.C. § 1346(a)(2). The facts in *Larsen* closely parallel those of the case before the court. Reserve officers in the U.S. Army who had been discharged after being twice passed over for promotion brought suit seeking reinstatement. Concluding that the essence of the officers' cases was their claims for back pay, exceeding $10,000, the court held it was without jurisdiction under the Tucker Act. *Id.* at 255.

The logic of *Larsen* and *Seamans* compels a similar finding in this case. Defendant has submitted detailed calculations, uncontested by plaintiff, of the amount of back pay which plaintiff would receive, much more than $10,000, if he were to prevail.

■ However, plaintiff seeks to avoid this jurisdictional obstacle by waiving recovery of all amounts in excess of $10,000. Where the amount of alleged damages would otherwise require plaintiff to pursue his suit exclusively with the Court of Claims, the district court may retain jurisdiction if the plaintiff waives the excess. *Stone v. United States,* 683 F.2d 449 at 451 (D.C.Cir.1982); *VanderMolen v. Stetson,* 571 F.2d 617, 619 n. 2 (D.C.Cir.1977). Although generally such a waiver should be set forth in the initial pleadings, the court may accept a later waiver if the issue of the jurisdictional amount does not arise until a subsequent stage in the proceedings. *Stone v. United States, supra,* at 454 n. 8; *but see McClendon v. Blount,* 452 F.2d 381, 383 (7th Cir.1971). In the instant case plaintiff waived all recovery above $10,000 in his opposition to defendant's motion to dismiss, the first point in these proceedings at which the issue was squarely raised. In view of plaintiff's timely waiver, the court holds that it has jurisdiction to hear this case.

### B. *Review of ABCMR action*

■ The scope of judicial review of the determinations of the ABCMR is narrow. Its actions must be upheld unless arbitrary, capricious or unsupported by substantial evidence. *DeCicco v. United States,* 677 F.2d 66 (Ct.Cl.1982). Viewing the record in light of the limited scope of review this court may exercise, the decision of the ABCMR must be affirmed.

Plaintiff does not complain of the procedural correctness of the Army's handling of his case, as indeed he could not. At each step of the review process the Army accorded plaintiff full, thorough and careful consideration of his contentions. The formal PEB members who heard plaintiff's testimony posed thoughtful questions evidencing the seriousness which they brought to their task. Both the Surgeon General and Physical Disability Agency twice reviewed

plaintiff's case, the second time after the ABCMR reopened plaintiff's case at his request after its deadline for submitting further evidence had passed.

Admittedly there was evidence before the ABCMR which indicated that plaintiff's gastric condition, from which he had suffered since 1964, worsened shortly before his discharge. The ABCMR of course had before it the MEBD findings that plaintiff at the time of his discharge did not meet the Army's medical retention standards, as well as the Veteran's Administration decision to accord plaintiff a 40% disability rating. In addition, the rater who performed the final annual evaluation of plaintiff noted that in the six to eight months preceding the report plaintiff's gastric condition had "hampered his duty performance." Record at 323.

However, substantial evidence in the record supports the ABCMR decision. As noted earlier, under applicable Army regulations the purely medical finding of physical impairment does not in and of itself justify a finding that a member is unfit, because fitness must be judged in light of the tasks a member is called upon to perform. AR 635–40 § 2–1. The Veteran's Administration decision, although evidence worthy of consideration, is not binding on the ABCMR. *DeCicco v. United States, supra,* 677 F.2d 66.[6] As to the final rater's observations, the indorser who reviewed that evaluation also noted a decline in plaintiff's performance during the months preceding his discharge, but still concluded that plaintiff's overall performance was superior. Record at 324. Finally, the ABCMR had before it the record of the formal PEB proceeding at which plaintiff admitted never having gone to see an Army physician during the period of alleged deterioration.

It is evident from the record below and from the affidavits submitted by plaintiff in support of his motion that plaintiff was a superior officer who had earned the respect and admiration of all those with whom he worked, some of whom feel he has been

done a grave injustice by being forced to leave the Army. But the wisdom of the Army's actions in requiring the discharge of able officers who because of limited openings are passed over for promotion is not before the court. Nor may the court decide *de novo* the question of plaintiff's fitness for duty. Although the court may be sympathetic to plaintiff's plight, it may not substitute its judgment for that of the ABCMR, but may overturn the board only if it acted arbitrarily or capriciously. Yet the record in this case does not warrant the conclusion that the Army "ignored relevant and competent evidence, that they unreasonably construed the significant body of medical documents before them, or that they in any other manner failed to discharge their designated duties." *Stephens v. United States,* 358 F.2d 951, 955, 174 Ct.Cl. 365 (1966). The ABCMR weighed the conflicting evidence and found plaintiff fit for duty. Unfortunately for plaintiff, "not all ailments or disabilities are incapacitating to the extent of justifying retirement by reason of physical disqualification." *Id.* Accordingly, this court affirms the judgment of the ABMR.

---

**6.** In *DeCicco* the Court of Claims upheld an ABCMR finding of fitness of an officer who had

received a 60% disability rating from the Veteran's Administration. 677 F.2d at 71.