Clifford POWELL, Plaintiff,

v.

John O. MARSH, Jr., Secretary of the Army, Defendant.

Civ. A. No. 82–1205.

United States District Court, District of Columbia.

March 31, 1983.

John H. Gullett of Gullett & Hines, Washington, D.C., for plaintiff.

Mitchell R. Berger, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and Royce C. Lamberth, Asst. U.S. Atty., Washington, D.C., were on brief and Charles R. Fulbruge, III, Chief of the Military Personnel Branch and John T. Burton of the Office of the Judge Advocate General, Washington, D.C., were of Counsel, for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

In this suit, plaintiff seeks review of a decision by the Army Board for Correction of Military Records ("ABCMR" or the "Board") that he was only 10% disabled at the time of his discharge. The Court now has before it Defendant's Motion to Dismiss, or, in the Alternative for Summary Judgment, plaintiff's opposition thereto and the entire record herein. For the reasons set forth herein, the Court will grant Defendant's Motion for Summary Judgment, thus refusing to disturb the ABCMR's decision denying plaintiff the record correction he sought.

## BACKGROUND

Plaintiff enlisted in the Army in 1952 and served (with a short absence between enlistments) until 1966 when he was honorably discharged. In 1958, plaintiff volunteered to participate in a drug-related experiment, in the course of which, he received one dose of lysergic acid diethylamide (LSD) and then participated in a variety of simulated combat skills.[1] Upon his separation from the Army, plaintiff underwent a physical examination that found that he was fit for

---

1. Plaintiff contests the wilfulness of his "volunteering" and argues that he received "at least one" dose of LSD. However, these factual disputes are not basic to the resolution of this motion. This is not a tort case. Rather, the sole issue presented here is whether the ABCMR acted properly with regard to plaintiff's request for a higher disability rating.

duty. No psychological disorder was noted at that time. Nor was plaintiff diagnosed or treated for any mental disorder between 1958 and 1976, although he underwent medical treatment for a variety of internal complaints during that time period. Additionally, plaintiff was continuously employed for the eight years following his discharge and did not seek any relief from the Army during this time.

In December of 1975, plaintiff applied to the Veterans Administration ("VA") for disability benefits for the first time. He claimed he was suffering from the disabling effects of an unknown drug administered to him in 1958.[2] Plaintiff underwent medical and psychiatric examinations in connection with his application in early 1976. He was diagnosed as suffering from an "anxiety reaction." However, the VA determined that he was entitled to no disability benefits.

On January 22, 1979, plaintiff, through counsel, sought reconsideration by the VA of its 1976 rating decision denying him disability benefits. Counsel also informed the VA that plaintiff had received LSD in the 1958 Army experiments. Plaintiff again underwent a medical examination, and was awarded a 10% disability rating for a non-service connected duodenal ulcer in July 18, 1980.[3]

Prior to that decision, plaintiff applied to the ABCMR for the correction of his records.[4] Plaintiff's application was based on the claim that he was disabled due to the 1958 experiment. He sought to convert his honorable discharge into a medical disability retirement with a 100% disability rating retroactive to the date of his separation.

In order to evaluate plaintiff's application, the ABCMR requested that the Office of the Surgeon General ("SG") determine whether plaintiff should have been retired because of disability, rather than honorably discharged.[5] The SG concluded that plaintiff did not have a medical condition at the time of his separation that would have warranted disability retirement.

At the request of plaintiff's counsel and to further aid in evaluating plaintiff's application, the ABCMR received authorization to conduct a comprehensive mental and physical evaluation of plaintiff, at the Army's expense, in February of 1981. This evaluation, conducted at the Walter Reed Army Medical Center ("Walter Reed"), found that plaintiff suffered from chronic paranoid schizophrenia, the onset of which occurred during plaintiff's active duty. However, the evaluation found no causal connection between the LSD plaintiff received and the psychological condition from which he suffered. Instead, the conclusion

2. Plaintiff did not learn that the drug he received was LSD until his attorney discovered the existence of the experimentation program through a Freedom of Information Act request in 1978. The Director of Neuropsychiatry at Walter Reed Army Medical Center ("Walter Reed") had sent a certified letter to plaintiff in January of 1976 advising him that he had received LSD and inviting him to participate in a follow-up program. Although this letter was twice mailed to plaintiff, he apparently did not receive it, due to several changes of address.

3. The reason for this delay appears to be that plaintiff did not formally reapply for disability compensation until March 14, 1980.

4. The ABCMR and VA systems of awarding disability benefits are separate and distinct. The VA's rating is based on the applicant's current disability. By contrast, the ABCMR is charged with determining what disability rating would have been appropriate at the time of the applicant's discharge from the Service. It is

well established that a VA determination of extent of disability at some post-discharge date, is not binding upon the ABCMR for purposes of arriving at the correct figure for disability retirement. See deCicco v. United States, 677 F.2d 66, 71 (Ct.Cl.1982); Finn v. United States, 548 F.2d 340, 342 (Ct.Cl.1977).

5. The ABCMR may obtain expert advisory opinions from within the Department of the Army to aid the Board in considering record correction applications. 32 C.F.R. § 581.3(h) (1981). In disability cases, the ABCMR routinely seeks advice from the SG on purely medical questions normally considered by a Medical Evaluation Board ("MEB"). With respect to the issue of fitness for duty, the ABCMR generally obtains an advisory opinion from the United States Army Physical Disability Agency ("USAPDA"), which normally reviews Physical Evaluation Board ("PEB") findings.

was that the LSD incident was a "coincidental precipitant" to plaintiff's disorder.

Plaintiff was next sent to Brooke Army Medical Center ("Brooke") for further testing. Brooke also found that plaintiff was suffering from a "paranoid delusional state." Based upon the findings of Walter Reed and Brooke, the ABCMR recommended that the SG reconsider its prior no-disability decision. The SG complied and issued a new opinion stating that if plaintiff's current condition had existed at the time of his discharge he would have been referred to a Medical Evaluation Board ("MEB"), which would have determined plaintiff to be medically unfit and would have referred plaintiff to a Physical Evaluation Board ("PEB").

Plaintiff's application was then referred by the ABCMR to the United States Army Physical Disability Agency ("USAPDA"). The USAPDA determined that if plaintiff had been referred to a PEB at the time of his discharge he would have been given a 10% disability rating with entitlement to disability severance pay. This determination was based on review of plaintiff's record including all of the evaluations previously conducted and upon the fact that plaintiff was able to maintain employment for eight years after separation.

In July of 1981, the ABCMR provided plaintiff with copies of all of the relevant opinions noted above and invited plaintiff's response. Plaintiff requested a hearing at this time, but the ABCMR denied that request. Plaintiff then returned to the VA and asked them to review their rating decision of July 1980 granting plaintiff 10% disability. After another examination, the VA affirmed its prior decision. However, when requested to reconsider by the Disabled American Veterans organization, the VA convened yet another review by a "Board of Three Psychiatrists." When the Board confirmed the prior diagnoses, the VA granted plaintiff a 50% disability rating for service-connected schizophrenia. Plaintiff's counsel then submitted the VA decision to the ABCMR.

Ultimately, the ABCMR granted plaintiff's application in part, amending his records to state that he was honorably discharged with 10% disability entitling him to severance pay. His records were so amended and on May 17, 1982, plaintiff received $8,870.40 in disability severance pay based on the correction of his records.

*The Court has Jurisdiction Over this Action Because the Government's Waiver of Sovereign Immunity was Not Revoked and Plaintiff Has Waived His Right to Recover Any Amount Over this Court's Jurisdictional Limit.*

■ For non-tort claims against the United States, the jurisdiction of this Court is limited to claims of less than $10,000. 28 U.S.C. § 1346(a)(2). This limit extends to any relief to which plaintiff would "immediately and necessarily" become entitled by virtue of the Court's decision. *See* 10 U.S.C. § 1201. Moreover, this jurisdictional ceiling has been applied to actions seeking a higher disability rating from the ABCMR. *Heisig v. Secretary of the Army,* 554 F.Supp. 623, 627 (D.D.C.1982).

If this Court were to find for plaintiff and order correction of his military records, the Court's Order would "immediately and necessarily entitle" the plaintiff to a substantial sum of money in retirement pay. Specifically, if the Court determined that plaintiff was entitled to a 100% disability rating, he would be entitled to more than $50,000 in back disability retirement pay. Therefore, the plaintiff must waive his rights to recover any amount over $10,000, in order for the Court to have jurisdiction over this suit. *See Goble v. Marsh,* 684 F.2d 12 (D.C.Cir.1982). Plaintiff has stated that he is willing to make such a waiver, if necessary. Plaintiff's Answer and Opposition to Defendant's Motion to Dismiss or For Summary Judgment, at 15A (Nov. 24, 1982).

■ Although plaintiff must waive his right to recover any more than $10,000, the Court holds that plaintiff has not waived his right to bring this suit. Defendant alleges that the plaintiff, in accepting par-

tial settlement of his claim (a 10% disability rating entitling him to $8,870 in back benefits), lost the right to proceed to seek further recovery (a 100% disability rating). When plaintiff accepted the back disability pay due to him, he signed a form which stated: "My acceptance of this settlement constitutes a complete release by me of any claim against the United States on account of this matter." This form was apparently based upon 10 U.S.C. § 1552(c) which provides that: "A claimant's acceptance of a settlement under this section fully satisfies the claim concerned." Defendant argues that these statements indicate that the United States has revoked its waiver of sovereign immunity once settlement of a claim is accepted.

The Court need not address the merit of this argument, nor must the Court determine whether plaintiff's recovery here is barred by the claim form or the statutory statement because the Court finds that defendant is estopped from asserting this claim. When asked to sign this form, plaintiff balked, concerned that accepting the proffered settlement would abrogate his right to appeal to this Court. Plaintiff ultimately decided to sign the form, but only after he had received two separate letters from the Department of the Army assuring him that signing the claim certificate would not preclude him from seeking further relief.

■ Defendant argues that these letters were not authorized and therefore cannot bind the government to the position they espouse. Whether the officials had actual authority, however, is not the relevant inquiry. In order for defendant to be estopped from making this claim, the Court must find that plaintiff reasonably relied on the apparent authority of the letter writers, to his detriment and that defendant engaged in affirmative misconduct. See e.g., Pratte v. NLRB, 683 F.2d 1038, 1043 (7th Cir.1982); National Treasury Employees Union v. Reagan, 663 F.2d 239, 249 (D.C.Cir. 1981). Plaintiff's conduct in refusing to sign the claim form until he had received multiple assurances, makes it clear that he

in fact acted in reliance upon these assurances. Further, his reliance would indeed result in substantial injury if, as a consequence, he were to be barred from seeking further relief. Finally, the Court finds that defendant did engage in affirmative misconduct when its agents represented to plaintiff that he was waiving no rights when, in fact, he was. Accordingly, the defendant is estopped from asserting waiver and the Court has jurisdiction over this action. The Court can, therefore, turn to the merits of this dispute. Two questions are presented: 1) Was the ABCMR's denial of plaintiff's request for a hearing an abuse of discretion; and 2) Did the ABCMR abuse its discretion in assigning plaintiff a 10% disability rating.

### The ABCMR's Denial of Plaintiff's Request for a Hearing Was Within the Board's Discretion.

■ It is well established that the ABCMR's decision to grant an oral hearing is purely discretionary. 32 C.F.R. § 581.-3(c)(5) (1975). See also Knehans v. Callaway, 403 F.Supp. 290, 297 (D.D.C.1975), aff'd sub nom., Knehans v. Alexander, 566 F.2d 312 (D.C.Cir.1977); Amato v. Chafee, 337 F.Supp. 1214, 1219 (D.D.C.1972). Therefore, this Court should only intervene if it finds that the ABCMR's denial of a hearing was an abuse of discretion. See Amato v. Chafee, 337 F.Supp. at 1219. There is nothing in the record which indicates that the ABCMR abused its discretion in determining that a hearing was not necessary for the just disposition of plaintiff's application.

Moreover, 10 U.S.C. § 1214 does not override the ABCMR's discretion and require a hearing in this case. That section provides that: "No member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it." It is clear from the terms of the statute that it was not intended to apply to the facts of this case. Here, plaintiff is not being forced to retire because of physical disability. Rather, he is voluntarily seeking the correction of his military records to indicate that he retired disabled.

Nor does Army Regulation 635–40 entitle plaintiff to a hearing on his application. Although that regulation gives the right to a formal hearing in physical disability cases, it only applies to the "Army Physical Disability Evaluation System." The ABCMR may seek advice from components of this system (like the MEBs and PEBs) on issues of disability, as it did in this case, but the ABCMR is not a part of this system and therefore is not bound by regulations governing its operation. *See* Army Reg. 635–40 § 1–6(a), (b). Accordingly, the Court holds that the ABCMR's denial of a hearing is purely discretionary and that discretion was not abused here.[6]

*The ABCMR's Decision was Reasonable and Supported By Substantial Evidence.*

The Court's role in cases of this type is limited to reviewing the record to determine whether the ABCMR's decision was arbitrary or capricious, unsupported by substantial evidence, or contrary to law. *See, e.g., deCicco v. United States,* 677 F.2d 66, 70 (Ct.Cl.1982); *Heisig v. Secretary of the Army,* 554 F.Supp. 623, 627 (D.D.C.1982); *Amato v. Chafee,* 337 F.Supp. 1214, 1217 (D.D.C.1972). The ABCMR's action clearly meets this standard in the case at bar.

It is undisputed that plaintiff is now suffering from a serious illness. However, that is not the question here. The ABCMR was charged with determining whether plaintiff was suffering from a disabling illness *at the time of his discharge*[7] and whether that disability was caused by his ingestion of LSD in an Army experiment.

In order to arrive at a reasoned and supportable conclusion, the ABCMR authorized numerous physical and psychological examinations of plaintiff. Based on the evidence produced by these exams, and the recommendation of the USAPDA,[8] the Board determined that plaintiff would only have been diagnosed as suffering from a 10% service related disability at the time of his discharge. The severity of his current illness, the Board concluded, was not causally related to the LSD he received in the Army's testing program. The Court finds that this determination was reasonable and supported by substantial evidence.

An Order in accordance with the foregoing will be issued of even date herewith.

---

**6.** Although Plaintiff's Memorandum in Opposition to Defendants Motion for Summary Judgment seems to abandon the claim, plaintiff's complaint alleges that the ABCMR actions were "without due process of law." The Court does not believe that plaintiff can state a valid due process claim. In order to state a claim under the due process clause, plaintiff must demonstrate the denial of a liberty or property interest. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, neither of these interests is present here.

The denial of plaintiff's petition to correct his military records to reflect a higher disability rating does not implicate a liberty interest. *See Knehans v. Callaway,* 403 F.Supp. 290, 296–97 (D.D.C.1975), *aff'd sub nom., Knehans v. Alexander,* 566 F.2d 312, 314 (D.C.Cir.1977). Certainly, plaintiff can not argue that his interest in his good name would be adversely affected by the failure of the ABCMR to rule that he is 100% disabled by reason of mental illness. Plaintiff has not even attempted to allege that he was deprived of a liberty interest.

Nor does plaintiff have a property interest that has suffered because of the ABCMR's actions. The Supreme Court has explained that property interests arise in specific benefits that a person *has already acquired. Board of Regents v. Roth,* 408 U.S. at 575, 92 S.Ct. at 2708. Here, plaintiff is *seeking to acquire* disability benefits. Under these circumstances, no property interest is implicated.

**7.** It is important to note that the VA finding of 50% disability was based upon an assessment of plaintiff's impairment as of April, 1980—not as of the time of separation. The VA's determination is not binding upon the ABCMR. *See* n. 4 *supra.*

**8.** The USAPDA regularly reviews fitness for duty and disability ratings of the PEBs and is fully familiar with the applicable standards. Accordingly, it was appropriate for the ABCMR to place substantial weight upon the USAPDA's recommendation.