James J. LICHTENFELS, Plaintiff,

v.

Verne ORR and The United States of America, Defendants.

No. C–3–81–397.

United States District Court, S.D. Ohio, W.D.

Dec. 14, 1984.

Mark E. Kerns, Springfield, Ohio, for plaintiff.

Gerald Kaminski, Asst. U.S. Atty., Dayton, Ohio, for defendants.

## DECISION AND ENTRY DENYING DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER

RICE, District Judge.

Plaintiff is before this Court seeking redress for his allegedly unlawful separation from the United States Air Force. When Plaintiff resigned from the Air Force on April 4, 1961, "for the good of the service," he was a Major with 15 years of active

duty and a Lieutenant Colonel in the inactive reserve with almost 20 years of service. Plaintiff's separation from the service became effective on May 2, 1961.

This is not Plaintiff's first attempt to pursue this cause of action. Plaintiff's Application for Review of Discharge or Separation from the Armed Forces, filed on September 12, 1970, was denied on August 9, 1971, after a hearing. Less than 6 years later, on July 13, 1977, Plaintiff filed Civil Action No. C-3-77-233 in this Court, demanding reinstatement and back pay. That action was dismissed with leave to refile on October 20, 1977, because of Plaintiff's failure to exhaust his administrative remedies.

On November 28, 1977, Plaintiff submitted an Application for Correction of Military Records to the Air Force Board for the Correction of Military Records (AFBCMR). The AFBCMR denied Plaintiff's application without a hearing on December 18, 1979; however, even before that decision became final, Plaintiff filed Civil Action No. C-3-79-256 in this Court, again demanding reinstatement and back pay. On April 30, 1980, this Court denied Defendants' Motion to Dismiss Case No. C-3-79-256, but transferred the action to the United States Court of Claims (now, the United States Claims Court) because the back pay sought by Plaintiff necessarily exceeded the Tucker Act's $10,000 jurisdictional maximum in actions brought against the United States in district court. 28 U.S.C. § 1346(a)(2).

Plaintiff accordingly filed Petition No. 212-80C for relief in the United States Claims Court. In September, 1980, Plaintiff moved to dismiss his action pursuant to Court of Claims Rule 102(a)(1)(iii). As no objection was made by the Defendants, the Motion was granted.

Plaintiff filed this action, No. C-3-81-397, on July 30, 1981, contending that his April, 1961, resignation "resulted from coercion for reasons based upon false charges which were supported only by evidence secured by violations of the Plain-

tiff's constitutional rights." (Doc. #1, ¶17). He seeks correction of Air Force records to nullify his resignation and to indicate that he is "entitled to full retirement status," and restoration of his commissions and their attendant benefits. Plaintiff has also eliminated his demand for back pay and attorneys' fees in this action (Doc. #1, ¶14). On December 7, 1981, Plaintiff filed a separate waiver eschewing all rights to monetary benefits which might otherwise accrue until the date of entry of a judgment, if any, in his favor (Doc. #6).

Plaintiff predicates his action upon 28 U.S.C. § 1331, the general federal question jurisdiction of this Court, and 28 U.S.C. § 1361, the district courts' mandamus jurisdiction to compel an officer or employee of the United States to perform a duty owed to Plaintiff. On December 21, 1981, the Defendants filed a Motion to Dismiss, arguing that this Court lacks subject matter jurisdiction and that Plaintiff's suit is barred by the six-year statute of limitations of 28 U.S.C. § 2401(a) as well as by the doctrine of laches. In the alternative, Defendants request transfer of this cause of action to Claims Court pursuant to 28 U.S.C. § 1406(c) (Doc. #7). For the reasons discussed below, this Court denies Defendants' Motion to Dismiss and its alternative Motion to Transfer to Claims Court.

## A. *Subject Matter Jurisdiction*

The Tucker Act, 28 U.S.C. § 1346(a)(2), gives district courts and the United States Claims Court concurrent jurisdiction over most civil actions and claims brought against the United States for amounts not exceeding $10,000. If an amount in excess of $10,000 is sought, then the Claims Court has exclusive jurisdiction to hear the case. 28 U.S.C. § 1491.

Having waived back pay, attorneys' fees and all monetary benefits which might accrue prior to judgment, Plaintiff now pursues restoration of his commissions and correction of records to nullify his resignation and to indicate his entitlement to "full

retirement status."[1]  The question at issue herein is whether the $10,000 jurisdictional ceiling of the Tucker Act includes prospective monetary benefits which might result from the relief provided by the judgment. Defendants contend that the value of Plaintiff's future benefits upon a judgment by this Court in his favor would exceed $10,000 and that, the framing of his claim for relief notwithstanding, Plaintiff is essentially seeking to claim in excess of $10,000 from the United States (Doc. # 7).

Defendants properly note the sensitivity of the district courts to fuzzily-framed claims which in essence seek in excess of $10,000 from the United States. In *Steinagel v. Jacobson,* 507 F.Supp. 288, 291 (S.D.Ohio 1980), this Court insisted that plaintiff therein amend his complaint to allege the maximum amount of back pay sought so as to insure that the Tucker Act's $10,000 limit would not be circumvented. A plaintiff may elect to claim only $10,000 even if more than that is due him, provided that he waives his claim to the excess. *Vander Molen v. Stetson,* 571 F.2d 617, 619 n. 2 (D.C.Cir.1977).

Few courts have considered the financial import for Tucker Act purposes of an order of reinstatement which is wholly separate from a claim for back pay. The test appears to be that where a declaration in favor of a claimant seeking reinstatement to a job with the federal government would immediately and necessarily entitle the claimant to monetary relief, the relief sought is in substance in the nature of a money judgment against the United States. *Powell v. Marsh,* 560 F.Supp. 636, 639 (D.D.C.1983); *Heisig v. Secretary of the Army,* 554 F.Supp. 623, 627 (D.D.C.1982), *aff'd,* 719 F.2d 1153 (Fed.Cir.1983). In *Powell,* for example, plaintiff sought to have his honorable discharge with a 10 percent disability rating converted into a medical disability retirement with a 100 percent disability rating. Noting that a decision in plaintiff's favor would "immediately and necessarily" entitle plaintiff to $50,000 in back disability retirement pay, the district court ruled that plaintiff had to waive his rights to recover any amount over $10,000 in order for the court to retain subject matter jurisdiction. 560 F.Supp. at 639.

In *Beller v. Middendorf,* 632 F.2d 788, 798 (9th Cir.1980), *cert. den.* 454 U.S. 855, 102 S.Ct. 304, 70 L.Ed.2d 150 (1981), a Navy enlistee discharged for his homosexual practices sued in district court for an injunction prohibiting his discharge in violation of his rights and for a correction of his records to delete his separation from the service due to homosexuality. As plaintiff sought damages only under the Privacy Act,[2] he did not couple his claim for injunctive relief and correction of records with one for back pay. Agreeing with the district court that the "primary relief" sought by the plaintiff was nonmonetary despite the future monetary benefits which would accrue to plaintiff upon a return to the service, the Ninth Circuit ruled that the claim was permissibly entertained by the lower court under the Tucker Act. *Id.* at 799.

Plaintiff herein has waived his entitlement to any benefits which would be deemed due and owing to him in the event of a judgment in his favor. Nor can this Court discern his immediate entitlement to new benefits upon a re-adjudication of his status, unlike the claimant in *Powell.* At least 20 years of active service are required before a member of the armed services becomes entitled to retirement pay, and Plaintiff had completed only 15 years of

---

1.  From Plaintiff's explanation in his Memorandum Contra to Defendants' Motion to Dismiss, this Court interprets the correction of records pertaining to Plaintiff's retirement status to mean that Plaintiff seeks restoration to the rolls of active duty for purposes of retirement pay at the 15-year mark where he was at his separation from the service.

2.  The Privacy Act provides in part that no agency shall disclose a record without prior written consent of the individual to whom it pertains unless disclosure is "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1).

such service by the time of his resignation. Plaintiff's years of inactive service in the Air Force reserves do not alter this requirement. 10 U.S.C. §§ 1331(a)(2); 1332(a)(2), (b)(1). This Court thus finds itself in agreement with the United States Court of Appeals for the District of Columbia, which noted in *Goble v. Marsh:*

> If a Plaintiff wins reinstatement on active duty, for example, he would be entitled to active duty pay for future periods of service; if he receives sufficient constructive service credit to be eligible for retirement, he would receive retirement benefits for future periods.... We agree that prospective post-judgment monetary benefits do not form part of the "claim" and need not be waived to establish District Court jurisdiction. Because these benefits do not constitute money presently due from the United States, they could not serve as a basis for a Tucker Act claim. *See United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1965). 684 F.2d 12, 16 n. 6 (D.C.Cir.1982).

Thus, this Court concludes that it has subject matter jurisdiction to entertain this suit.

B. *Statute of Limitations*

■ A claim against the United States brought in district court is barred "six years after the right of action first accrues." 28 U.S.C. § 2401(a). A claim against the United States brought in Claims Court is barred if not brought "within six years after such claim first accrues." 28 U.S.C. § 2501. Although these statutes appear nearly identical in their wording, the Claims Court and numerous district courts have differed in their belief as to when a case involving separation from military service "accrues" for limitations purposes. Integral to this question of interpretation has been the doctrine of exhaustion of administrative remedies. The exhaustion doctrine requires that where a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the

courts will act. *United States v. Sing Tuck*, 194 U.S. 161, 24 S.Ct. 621, 48 L.Ed. 917 (1904). Said to be an expression of administrative autonomy as well as a rule of sound judicial administration, the exhaustion requirement instructs trial courts to refrain from interfering in a case until the appropriate agency has had the opportunity to exercise its discretion and to apply its own expertise. Schwartz, Administrative Law § 172 (1976).

■ The exhaustion of remedies doctrine is said to be inapplicable when the terms or implications of the statute authorizing an administrative remedy indicate the legislature's intent to allow the judicial remedy even though relief through administrative channels remains available. In other words, the requirement does not apply when administrative remedies are believed to be permissive rather than mandatory. In the view of the Claims Court, all administrative remedies in the military hierarchy are permissive, whether the remedy in question be the initial Discharge Review Board procedure or the subsequent review by the Board for Correction of Military Records. *Mathis v. United States*, 391 F.2d 938, 939, 183 Ct.Cl. 145 (1968), *vacated for rehearing on other grounds*, 394 F.2d 519, 183 Ct.Cl. 145 (1968), *aff'd*, 457 F.2d 926 (Ct.Cl.1972). A claim for illegal separation from military service thus "accrues" under 28 U.S.C. § 2501 for Claims Court purposes upon the date of the plaintiff's removal from the service. *Bonen v. United States*, 666 F.2d 536, 539 (Ct.Cl. 1981) (citing cases). Under this approach, Plaintiff's claim would have accrued either on April 4, 1961, the date of his resignation, or on May 2, 1961, the date upon which his resignation became effective.

A number of district courts have taken a view contrary to the Claims Court as to whether military administrative channels are permissive or mandatory for purposes of 28 U.S.C. § 2401(a), their own six-year statute of limitations. While there is some authority that a claim for illegal military discharge under Section 2401(a) accrues upon the date of discharge since military

administrative remedies are permissive in nature, *June v. Secretary of Navy*, 557 F.Supp. 144, 149 (M.D.Pa.1982) (citing *Nelson v. Miller*, 373 F.2d 474, 479 (3rd Cir. 1967)), a number of other courts, embracing the policies behind the exhaustion of remedies doctrine, have held that review by the Discharge Board and the Board for Correction of Military Records is mandatory in nature. As such, these latter courts have held that Section 2401(a)'s six-year statute of limitations is tolled until a plaintiff exhausts his or her military administrative remedies. *Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir.1980); *Bard v. Seamans*, 507 F.2d 765, 769 (10th Cir. 1974); Everett, Military Administrative Discharges—The Pendulum Swings, 1966 Duke L.J. 41, 72–75 (1966).

In dismissing Plaintiff's first suit, Case No. C–3–77–233, on October 20, 1977, with leave to re-file, Judge Rubin took the position that appeal to the Air Force Board for the Correction of Military Records was a mandatory remedy and that the exhaustion doctrine required that Plaintiff pursue the remainder of his administrative remedies prior to filing a federal court suit (Doc. # 1, Exh. C).[3] This Court is in accord with Judge Rubin that strong policy reasons dictate resort to the administrative machinery specifically provided by Congress for the purpose of reviewing military discharges before litigation in these matters is entertained in the district courts.

This Court holds that Section 2401(a)'s six-year statute of limitations began to run on December 18, 1979, the date that the AFBCMR denied Plaintiff's Application to Correct Military Records (Doc. # 1, Exh. D). *See Ballenger v. Marsh*, 708 F.2d 349, 351 n. 4 (8th Cir.1983). Plaintiff filed the instant action, Case No. C–3–81–397, on July 30, 1981.[4] As this was far less

than six years after the date of the AFBCMR's denial of Plaintiff's application, this suit must be considered timely under 28 U.S.C. § 2401(a).

## C. *Laches*

A determination of laches is left to the discretion of the trial court. *Gruca v. United States Steel Corporation*, 495 F.2d 1252, 1259 (3rd Cir.1974). Equity does not impute laches to a party for delay alone, but only for a delay which is unreasonable under the circumstances and which has resulted in harm to the other party. McClintock, Equity § 28 (2d ed. 1948). Laches is shown by establishing (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. *United States v. Weintraub*, 613 F.2d 612, 619 (6th Cir.1979), *cert. den.* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980).

Although statutes of limitation are often used as an analogy, laches may be found to preclude actions where the delay in filing suit was shorter or longer than the relevant statute of limitation. McClintock, Equity § 28 (2d ed. 1948). The length of delay, while not mandating the outcome, does appear to control burdens of proof. As Plaintiff's action is timely for purposes of the six-year statute of limitations of 28 U.S.C. § 2401(a), Defendants bear the burden of proving the elements of laches. *Gruca*, 495 F.2d at 1259; *Hurst v. United States Postal Service*, 586 F.2d 1197, 1200 (8th Cir.1978).

The primary thrust of Defendants' laches claim is that their files concerning Plaintiff were destroyed in, approximately, January of 1977, in accordance with their own internal procedures (Doc. # 6, Exh. B). As applications for review of discharges

---

**3.** Plaintiff asserts in his Memorandum that Defendants did not raise the issue of the statute of limitations in either of Plaintiff's previous actions before this Court (Doc. # 8).

**4.** On July 11, 1979, Plaintiff filed Case No. C–3–79–256 in this Court. The action was transferred to Claims Court on order of this Court. As Plaintiff filed his petition in Claims Court but

then voluntarily dismissed it prior to filing the instant action (Doc. # 1, Exh. F), the doctrine of *res judicata* has no bearing upon this case. *See Stephens v. Resor*, 437 F.2d 1207, 1208 (6th Cir.1971) (*res judicata* bars relitigation in federal court of issues previously submitted to and denied by Claims Court).

are permitted up to 15 years from the date of separation, 10 U.S.C. § 1553(a), and Plaintiff resigned in 1961, the rationale for this action is somewhat understandable. Defendants now contend that this destruction of records, in conjunction with the difficulty in procuring witnesses given the 20-odd years which have elapsed since Plaintiff's separation, warrants preclusion of Plaintiff's suit on the grounds of laches.

While Plaintiff has clearly not been prompt in seeking redress or in exhausting his administrative remedies, certain of his arguments against application of the laches doctrine warrant careful consideration. In November of 1977, Plaintiff submitted an Application for Correction of Military Records to the AFBCMR. Although the three-year statute of limitations for such review had long since expired, the AFBCMR exercised its statutorily-granted discretion and accepted Plaintiff's application "in the interest of justice." 10 U.S.C. § 1552(b). It then denied Plaintiff's application, without a hearing, "after a careful consideration of your application and military records" (Doc. # 6, Exh. D).

While this Court shares Defendants' concern that they be able to fully prepare for a confrontation with Plaintiff, the facts and circumstances of this case persuade the Court that Defendants will not be unduly hampered in their preparations. Had the Air Force's own administrative arm, the AFBCMR, felt that it was unable to adjudicate the merits of Plaintiff's case on the basis of evidence surviving in its files, surely it would not have exercised its discretion and accepted Plaintiff's application for correction. Not only did the AFBCMR proceed to hear Plaintiff's appeal, however, but it felt competent to resolve the matter without the need for a hearing. Moreover, in the case pending before this Court, Defendants have the possibility of retrieving, in effect, some of the evidence deleted from their files in January, 1977. Plaintiff has offered to make available to Defendants the extract of his records, "as prepared by our examiners for the benefit of the applicant and members of the Air Force Discharge Review Board", sent to Plaintiff

on January 12, 1971 on his request prior to the Board's ruling on his 1970 Application for Review of Discharge (Doc. # 8, Exh. C).

Given the availability of this extract and Defendants' ability to review Plaintiff's claim in 1979 without the records destroyed in 1977, this Court does not find Defendants to have met their burden of demonstrating the prejudice arising from Plaintiff's pursuit of this claim. Accordingly, this Court rejects Defendants' claim that Plaintiff's suit should be barred under the doctrine of laches.

D. *Transfer to Claims Court*

Defendants have coupled their Motion to Dismiss with a Motion in the Alternative to transfer Plaintiff's suit to Claims Court. Under 28 U.S.C. § 1406(c), the district court must determine whether the "interests of justice" dictate such a transfer. Factors to be considered are whether the statute of limitations would otherwise run, the convenience of parties and witnesses, and whether efficient and expeditious administration of justice would be furthered. *Sherar v. Harless,* 561 F.2d 791, 794 (9th Cir.1977).

As discussed *supra,* a claim for an illegal separation from military service accrues for Claims Court purposes upon the date of Plaintiff's removal from the service. Plaintiff's claim would thus be barred in Claims Court under 28 U.S.C. § 2501. As Plaintiff's suit is timely in this Court, it cannot be said that the "interests of justice" would be served by a transfer of this matter to Claims Court. Defendants' Motion in the Alternative to Transfer this case to Claims Court is, therefore, denied.